# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOSEPH P. MARKER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CHESAPEAKE LIFE | : | |
| INSURANCE COMPANY, | : | NO. 10-729 |
| Defendant. | : | |

## MEMORANDUM

GENE E.K. PRATTER, J.                                                    JULY 6, 2011

Joseph P. Marker seeks leave to amend his Complaint to join an additional, non-diverse defendant. For the reasons set forth below, and consistent with 28 U.S.C. § 1447(e), the Court grants Mr. Marker's motion and remands his case to the Philadelphia County Court of Common Pleas.

## BACKGROUND

Mr. Marker, a Pennsylvania citizen, originally filed this action against Chesapeake Life Insurance Company in the Court of Common Pleas seeking to recover $200,000 in insurance benefits and additional relief. Chesapeake Life, which is organized and has a principal place of business in Oklahoma, removed the case to this Court on February 19, 2010 on the grounds of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332.

Mr. Marker's original complaint asserts three claims against Chesapeake Life under Pennsylvania law for negligence, breach of contract, and tortious breach of covenant of good faith and fair dealing and insurance bad faith. The Complaint alleges that Mr. Marker's wife, Patricia Marker, entered into a term life insurance policy with Chesapeake Life on February 12, 2008 with Mr. Marker as the named beneficiary. Following Mrs. Marker's death on September

12, 2008 due to injuries sustained in an automobile accident, Mr. Marker filed a complete and timely claim for the benefits due under the policy. Mr. Marker avers that Chesapeake Life has not paid those benefits ostensibly because it claims that there were misstatements in the policy application for concerning Mrs. Marker's physical condition. Mr. Marker contends that those alleged misstatements were unrelated to Mrs. Marker's cause of death. Mr. Marker also asserts that Chesapeake Life failed to properly underwrite the policy to check Mrs. Marker's medical history in public records and engage in other "field underwriting." In response, Chesapeake Life answered the Complaint and filed three counterclaims under Pennsylvania law.

Following the pleadings stage, the parties engaged in pre-trial discovery, during the course of which Mr. Marker contends that he discovered "the existence of additional facts which merit the assertion of additional theories of relief." Pl. Br. ¶ 1. Specifically, these facts came to light while Mr. Marker personally was reviewing the deposition of Orlando DeStefano, an insurance broker under contract with Chesapeake Life. Thereafter, Mr. Marker filed the motion at bar seeking leave to amend the Complaint to join Mr. DeStefano, a Pennsylvania citizen, as a defendant on counts of negligence and breach of contract. Additionally, Mr. Marker separately filed against Mr. DeStefano and Chesapeake Life a Summons in the Court of Common Pleas of Philadelphia County.

## STANDARD OF REVIEW

Section 1447(e) of Title 28 of the United States Code provides: "If after removal [from a state court] the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny the joinder, or permit joinder and remand the action to the State court." Thus, the statute permits joinder of non-diverse parties, even when joinder destroys

diversity jurisdiction and requires that the action be remanded to state court. "Although motions to amend are liberally granted under Rules 15(a) and Rule 20, a court must scrutinize motions to amend more carefully where a plaintiff seeks to join a non-diverse party, and as a result, deprive a federal court of subject matter jurisdiction." *City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d 742, 746 (D.N.J. 2008). Indeed, "Section 1447(e) supersedes Rule 15" and "grant[s] substantial discretion in whether to permit joinder to the courts." *Doe No. 4 v. Soc'y for Creative Anachronism, Inc.*, Nos. 07-1439, 07-1440, 2007 WL 2155553, at *3 (E.D. Pa. July 25, 2007) (citing *Massaro v. Bard Access Sys., Inc.*, 209 F.R.D. 363, 368 (E.D. Pa. 2002); *Guldner v. Brush Wellman Inc.*, No. 01-176, 2001 WL 856699, at *2 (E.D. Pa. July 25, 2001)).

Although the Court of Appeals for the Third Circuit has not articulated a preferred methodology for analyzing Section 1447(e), district courts within this Circuit have adopted the *Hensgens* test set forth by the Court of Appeals for the Fifth Circuit in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987). *See Grafstrom v. Chiquita Brands Int'l, Inc.*, No. 11-387, 2011 WL 1475492, at *1 (E.D. Pa. Apr. 13, 2011); *Doe No. 4*, 2007 WL 2155553, at *3; *City of Perth Amboy*, 539 F. Supp. 2d at 746. Under *Hensgens*, courts evaluate (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities. *Hensgens*, 833 F.2d at 1182. In applying this test, courts must recognize that there are "competing interests" at issue and that discretion is required: "On one hand, there is the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources. On the other side, the diverse defendant has an interest in retaining the federal forum." *Id.*

**DISCUSSION**

Upon consideration of the four *Hensgens* factors, the Court concludes it is appropriate to grant Mr. Marker leave to file an amended complaint and thereby permit the joinder of Mr. DeStefano.[1]

First, there are no indicia that Mr. Marker's motion to amend is simply a veiled effort to defeat the Court's jurisdiction. Mr. Marker asserts that his intent in seeking to amend his complaint is to pursue an additional theory of liability against another party and to avoid prosecuting separate cases arising from the same factual events. Pl. Br. at 3; *cf. Massaro*, 209 F.R.D. at 369 (concluding that plaintiff was not seeking to defeat diversity jurisdiction because the "plaintiff['s] motivation is to avoid the burden of prosecuting two claims arising from the same set of facts in two separate forums"). Indeed, there is considerable support for the authenticity of Mr. Marker's argument. Mr. Marker has separately filed a summons in the Court

---

[1] By seeking leave to amend his complaint, Mr. Marker also seeks to amend, albeit not substantively, the allegations in his claims against Chesapeake Life. Mr. Marker acknowledges that, apart from proposed amendments concerning the new claims asserted against Mr. DeStefano, the proposed amended complaint also includes "more of a direct focus" on allegations from the original complaint that Chesapeake Life was negligent in supervising Mr. DeStefano under a theory that Mr. DeStefano was Chesapeake Life's agent. Arg. Tr. at 11. Chesapeake Life apparently opposes Mr. Marker's Motion, in part, on this score because Chesapeake Life contests Mr. Marker's theory of an agency relationship existing between Mr. DeStefano and Chesapeake Life. Def. Br. ¶ 2; Arg. Tr. at 18-19, 22-23. However, Chesapeake Life's arguments are more pertinent to a determination on the merits of Mr. Marker's claims rather than the issues addressed by the *Hensgens* test, and as such the Court does not consider those arguments relevant in its present analysis.

Furthermore, the Court concludes that under the present circumstances, as further discussed herein, the proposed amendments of allegations relating to claims against Chesapeake Life would not require denying an amendment pursuant to Fed. R. Civ. P. 15(a). *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (recognizing the Court may deny request to amend a pleading under Rule 15(a) only when the following circumstances exist: "(1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party").

of Common Pleas of Philadelphia County against Mr. DeStefano and Chesapeake Life, and he has articulated a preference to remain in this venue if the Court grants leave for Mr. Destafano's joinder, notwithstanding the legal authority that requires the case to be remanded under such circumstances, *see* Pl. Br. ¶ 10; Arg. Tr. at 9. Mr. Marker also never opposed the removal of the action to this Court, *see* Arg. Tr. at 9; Pl. Suppl. Br. at 6, and never exercised the opportunity to join additional parties who might have defeated diversity at the Court-ordered deadline for joining parties (June 1, 2010) and subsequent extended deadlines (June 15, 2010 and June 30, 2010). *See* Scheduling Order (Doc. No. 6); Order (Doc. No. 9); Order (Doc. No. 10). Furthermore, Chesapeake Life does not object to the Motion on the basis of this factor; indeed, Chesapeake Life has represented that it does not believe Mr. Marker's purpose in seeking to amend his complaint is to defeat diversity. Arg. Tr. at 18.

Second, Mr. Marker was not dilatory in seeking to amend his complaint. Although Mr. Marker filed his motion over eight months after removal and four months after the Court's extended deadline to add additional parties, the passage of time is not, in and of itself, indicative of dilatory conduct. *City of Perth Amboy*, 539 F. Supp.2d at 748 (citing *Doe No. 4*, 2007 WL 2155553, at *3).

The nature of the timing for filing the motion is a consideration in determining whether Mr. Marker was dilatory, *id.* (citing *Kahhan v. Massachusetts Cas. Ins. Co.*, No. 01-1128, 2001 WL 1454063, at * 3 (E.D. Pa. Nov. 14, 2011)), and, here, the nature of the timing suggests that Mr. Marker has been diligent in seeking amendment. Under certain circumstances, courts have found that "[w]hen a plaintiff knows about the non-diverse defendant's activities at the time the complaint was originally filed but does not include that person as a party, subsequent attempts to

5

join that person as a party will be viewed as an attempt to destroy diversity." *Montalvo v. John Doe I*, No. 10-2617, 2010 WL 3928536, at *3 (E.D. Pa. Oct. 5, 2010) (citing *Salamone v. Carter's Retail, Inc.*, No. 09-5856, 2010 WL 762192, at *2 (D.N.J. Mar. 5, 2010)). While at the time of filing the initial complaint Mr. Marker knew Mr. DeStefano and some of Mr. DeStefano's insurance broker activities relating to the facts giving rise to this matter, "[s]ubsequent developments and the actions of the parties during the time between the filing of the complaint and the motion to amend can also be relevant considerations" in determining if the plaintiff was dilatory. *Montalvo*, 2010 WL 3928536, at *3 (citing *C.I.N. Const., LLC v. Hunt Const. Group, Inc.*, No. 08-5810, 2009 WL 2998965, at *12 (D.N.J. Sept. 18, 2009)).

Thus, despite knowing Mr. DeStefano had acted as an insurance broker and completed Mrs. Marker's insurance application at the time the initial complaint was filed, Mr. Marker was not privy then to certain information that was indicative of Mr. DeStefano's possible liability for Mr. Marker's injury. This information was only subsequently available as a result of Mr. DeStefano's deposition. Mr. Marker contends that Mr. DeStefano's deposition suggests evidence that Mr. DeStefano knowingly submitted an application with false statements on behalf of Mrs. Marker. In particular, Mr. Marker asserts that Mr. DeStefano misstated certain facts by saying that "he was not aware the Insured (1) had a medical history involving her ankle; (2) took pain killers, and (3) was not employed as a "clerk" for $25,000 a year," Pl. Br. ¶ 3. Mr. Marker has attested in an affidavit that Mr. DeStefano was aware of those facts, and consequently, he was "shocked" that Mr. DeStefano would testify otherwise. Pl. Br. Ex. C (Marker Affidavit). Mr. Marker also asserts that at the deposition Mr. DeStefano produced another life insurance application for Mrs. Marker with Assurity Life Insurance Company, signed November 14, 2006,

that he had completed, *see* Def. Br. Ex. 2 (DeStefano Trans.) at 18:11-21, and which contained "the same pattern of misstatements" at issue with Mrs. Marker's Chesapeake Life application. *Id.*[2] Without such evidence, Mr. Marker argues that a theory of liability premised on Mr. DeStefano knowingly submitting false applications was not available or known to him at the time he filed his initial complaint.

Given Mr. Marker's arguments on this score, it is apparent that Mr. Marker's primary intent in seeking amendment is to strengthen his case by pursuing relief against another defendant. *See C.I.N. Const., LLC*, 2009 WL 2998965, at *12.[3] Furthermore, the information giving rise to Mr. Marker's new theory was not previously available until Mr. DeStefano's deposition; Mr. Maker could not know in advance that Mr. DeStefano would testify to facts that contradicted Mr. Marker's conception of the facts at the time he first filed the complaint. Mr. Marker moved to amend three weeks after Mr. DeStefano's deposition, and as such, Mr. Marker's conduct cannot be said to be lagging to the extent that the equities would disfavor granting leave to amend his complaint. *See Massaro*, 209 F.R.D. at 369 (concluding that "plaintiff has not been dilatory in his pursuits" because he did not delay in seeking to join

---

[2] Mr. Marker also argues that his inability to previously know of Mr. DeStefano's possible liability is also attributable to Mr. DeStefano's deceptive conduct. Mr. DeStafano allegedly advised Mr. Marker "that regardless of any misstatement in the Application, the insurer had to pay because it was negligent in not checking the national data bank for medical treatment and prescriptions . . . ." Pl. Reply at 4-5.

[3] Of course, the Court takes no position on whether such a theory will bear out on the merits. However, the Court recognizes that Mr. Marker's counsel has signed the proposed amended complaint and attached a copy as an exhibit to the Motion, which pursuant to Fed. R. Civ. P. 11 constitutes representations, *inter alia*, that the pleading's "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that the "factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

additional defendants and instead "quickly filed a second suit against the [additional defendant] and sought to consolidate [that action] with the original suit" upon learning facts that allowed plaintiff to assert an allegation against the additional defendant).

Chesapeake Life argues that permitting Mr. Marker to amend the complaint will result in unnecessarily prolonging the litigation to allow more time for additional discovery. Def. Br. at 10-11; Arg. Tr. at 18-19. It further contends that such a delay necessarily postpones resolution of the merits for claims against Chesapeake Life given that Chesapeake Life claims it is prepared to move for summary judgment. Def. Br. at 11; Arg. Tr. at 18-19. However, after exploring this issue with the parties during oral argument, the Court concludes that while additional discovery undoubtedly would be warranted with the joinder of Mr. DeStefano, the parties would nonetheless be obliged to participate in additional discovery regardless of whether Mr. Marker's motion was denied and he persisted with pursuing his claims against Mr. DeStefano in his state court action, in which Chesapeake Life is also a defendant. Arg. Tr. at 12-14, 16. Furthermore, as Chesapeake Life acknowledged at the argument, some or all merits of the claims against Chesapeake Life would not necessarily be unduly delayed given that they could be addressed after the amended complaint is filed through a variety of means, including a Rule 12(b) motion or an application for partial summary judgment. Arg. Tr. at 23-24.[4]

Third, Mr. Marker would be prejudiced if the Court denies his amendment. Certainly, Mr. Marker will not be prejudiced to the extent that his state court case against Mr. DeStefano

---

[4] Moreover, contrary to Chesapeake Life's contentions otherwise, Mr. Marker's purpose in amending the complaint does not appear to be an effort to prolong the litigation gratuitously. As previously discussed, a fair interpretation of the information available to the court suggests only that Mr. Marker is motivated to amend the complaint to avoid prosecuting two suits in two different forums arising from the same facts.

8

might be barred by statute of limitations.[5] However, Mr. Marker would endure the general burden of litigating two cases concerning the same nexus of facts and legal theories in two separate forums. By doing so, Mr. Marker likely would sustain a significant economic burden, which amounts to considerable prejudice.[6] *Kahhan*, 2001 WL 1454063, at * 2 (citing *Lehigh Mech., Inc. v. Bell Atl. Tricon Leasing Corp.*, No. 93-673, 1993 WL 298439 (E.D. Pa. Aug. 2, 1993)); *City of Perth Amboy*, 539 F. Supp. 2d at 748-49. The Court recognizes such financial prejudice could be tempered to some degree through the coordination of the remaining discovery between the two cases. *Doe No. 4*, 2007 WL 2155553, at *4 ("[The] Court would be amenable to arranging discovery on a mutual basis between this case and any state court action against [the non-diverse party] to avoid . . . duplication of depositions and other discovery matters"). Nonetheless, such additional efforts would not necessarily be required if the motion is granted.

Additionally, the litigation of two cases in different forums involving essentially the same set of facts, evidence, and legal issues, raises the potential for inconsistent rulings—in particular, given the parties' ardent dispute over whether Mr. DeStefano was acting as an agent of Chesapeake Life or the Markers during the time period at issue. *City of Perth Amboy*, 539 F. Supp. 2d at 749 ("[A]lthough Plaintiff could bring a separate suit against [non-diverse defendant] in state court . . . . there is a genuine risk of conflicting findings and rulings.").

---

[5] Neither party raised this issue in briefing. However, Mr. Marker conceded that a statute of limitations would not bar his claims in the state court action against Chesapeake Life and Mr. DeStefano. Arg. Tr. at 12.

[6] The Court notes that Chesapeake Life also would have to bear the costs of two actions. And, of course, the overall judicial system would be devoting the resources of two courts to essentially the same dispute. *Kahhan*, 2001 WL 1454063, at * 3 ("It would be a great waste of judicial resources to explore these issues in two separate proceedings.").

Fourth, the other equitable issues raised by the parties do not disfavor allowing Mr. Marker to amend his complaint. As previously discussed, the possible prejudice to Chesapeake Life in having to participate in additional discovery and its attendant costs if Mr. DeStefano were joined would still exist if Mr. Marker continued to pursue his already-filed state court action against both defendants. To the extent that the resolution of the merits of claims against Chesapeake Life might be postponed, such delay could be overcome or ameliorated through other means.

Furthermore, the Court observes that Chesapeake Life itself may possibly benefit from Mr. Destefano's joinder. Chesapeake Life would not have to defend itself in two separate actions. And, as even Chesapeake Life's counsel conceded at the oral argument, having Mr. DeStefano as a separate party in the action could benefit Chesapeake Life in advancing its defense that Mr. DeStefano did not act as its agent. Arg. Tr. at 19. Thus, the "most logical, economical and equitable approach is to determine the respective rights and liabilities of all relevant parties *inter se* in one proceeding." *Carter v. Dover Corp., Rotary Lift Div.*, 753 F. Supp. 577, 580 (E.D. Pa. 1991).[7]

It follows that the balance of the competing considerations under the *Hensgens* test weigh in favor of granting Mr. Marker leave to file his amended complaint and join Mr. DeStefano as a defendant. Accordingly, the Court concludes that it is appropriate to grant Mr. Marker's motion.

---

[7] Although neither party raised this issue in briefing or argument, the Court recognizes that arguably "when there is a lack of a significant federal interest in deciding the state law issues, federal courts prefer to have state courts interpret their own laws." *Kahhan*, 2001 WL 1454063, at *3 (citing *Carter*, 753 F. Supp. at 579; *Stipa v. Rodenhicher*, No. 95-1967, 1995 WL 384616, at *2 (E.D. Pa. June 23, 1995)).

Mr. Marker has not filed a motion to remand the case to state court. However, because Messrs. Marker and DeStefano are Pennsylvania citizens, joining Mr. DeStefano as a defendant destroys diversity jurisdiction, the Court's only jurisdictional basis to hear this matter. Accordingly, the Court remands the case to state court *sua sponte* in accordance with 28 U.S.C. § 1447(e). *See Montalvo*, 2010 WL 3928536, at *1 n.1 (citing *C.I.N. Constr.*, 2009 WL 2998965, at *1).

## CONCLUSION

For the foregoing reasons, Mr. Markers motion to amend his complaint and join Mr. DeStefano as a defendant is granted, and the Court remands this action to the Philadelphia County Court of Common Pleas consistent with 28 U.S.C. § 1447.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
United States District Judge